V. President for the United States of America, the President of the United States of America, All right, we'll call the next case of the morning, No. 15-50991, United States v. Shepherd. We'll hear from Mr. Aristotelidis to begin with. Good morning. Good morning. May it please the Court, Counsel. Neither the petition, neither the appellant, his defense attorney, the prosecutor, or the Court were aware that at the time Mr. Shepherd pled guilty to failure to report in Texas under the federal statute that neither of the two allegations in the factual basis were true. One, the allegation that he had to report his Nevada conviction was never the case. He needed two Nevada convictions, as per Nick Rose, the agent who investigated the case back in 2012. The government had that information and knew that back in 2012. Somehow that didn't make it to the U.S. Attorney's Office, where the prosecutor at the time of the plea alleged that my client had to report that offense as well. The other offense involving the Arizona conviction was, according to a preliminary examination by a DPS attorney, reportable sometime before August 30th of 2012. Randy Ortega was the analyst, attorney-slash-analyst, who informed my client that as of the time post-August 30th, 2012, which would have been a time before he even pled guilty, he was no longer required to report the Arizona conviction. My client only found out about this after serving 24 months in prison, being released on supervised release, and then reporting over to DPS to find out what he always had suspected, and that is that he did not have to report in Texas after having been convicted of the two offenses. Having done that, my client—and this was a pro se submission. I came in as appointed counsel by the court after the fact at the hearing. He raised the arguments that his lawyers were ineffective. He raised an ineffective assistance claim against appellate counsel. We don't believe, and we have withdrawn that as his counsel. But there is a remaining ineffective assistance claim against his plea lawyer, and there is also a stand-alone claim that the plea was not voluntary on its own, which the magistrate judge—in this case, Magistrate Matthew, former magistrate Matthew—found in her recommendation to the court. She identified the allegation that, first of all, under the ineffective assistance claim, that but for the appellant's failure to know that either of these two opinions, either of these two convictions were reportable, he would have proceeded to trial. So what did his lawyer not do that he should have done? Because I assume his lawyer recommended that he plead guilty, but where did the lawyer fall short in his obligation? He did, Your Honor. He did recommend. The plea counsel testified that when he encountered the appellant, he received discovery, and based on that discovery, he then conducted his own analysis of the statutes. He did his own, quote, substantial similarity test, and he came to the conclusion that the statutes from the Arizona and Texas convictions were similar enough that he had to report under Texas law. He did not, however, research the law. He did not call DPS. He did not contact any of the analysts who came up with a—well, actually, at the time, the only analyst who came up with a conclusion that my client had to report. He didn't check with them at all. It was a situation— This is a federal public defendant, right? Yes, Your Honor. So it surprises me in a way that he's perhaps falling on his sword because, in fact, this anonymous—I mean, the only reason that Mr. Ortiz said that the fellow was not required to register was because of this case called anonymous, right? Yes, Your Honor. And that wasn't decided until late August, which was, in fact, after the fellow had pled guilty. Your Honor, he pled guilty in September 24th. But he had already been—hadn't he been arraigned and already essentially admitted what he had done, that he needed to— The preliminary, sure, investigation, the discussions about the merits of the case had already occurred, Your Honor. I mean, anonymous was issued on August 30th of 2012, and the fellow pled guilty, what, 10 days later? September 24th, Your Honor. All right, three weeks later. Yes, Your Honor. How long does it take to get this kind of information out into the public domain? Your Honor, I don't know. Yeah, I mean, that's— And that's a good question, Your Honor. It's a question of, well, how much do you do as a lawyer to find this information out? Well, I must say that we have Fifth Circuit arguments all the time where people do not discover relevant cases. They just don't. Sometimes they do two days before argument, but a lot of times they don't. Yes, Your Honor. I mean— I would add, Your Honor— So it's—I mean, it just seems to me I'm not sure about the involuntariness of the guilty plea because the client is allowed to rely on his attorney's advice, and, you know, looking at the statute was certainly a reasonable thing to do. I would respectfully disagree, Your Honor. It's certainly something to consider because of the amount of time that passed. But my client was not sent until December. There was plenty more time that passed where counsel could have checked with DPS. And the point that I'm trying to raise is— Did he compare the appropriate statute? I mean, was he looking at an incorrect statute to compare with, or was it the statute that he was pled guilty—that he pled guilty to and was found guilty of? I mean, was there an indictment? Was he looking at another document or something else that might have led him to comparing an inappropriate statute? Or is there evidence enough to show that it was a correct statute that he was comparing? That's a somewhat complex question, Judge, because the analysis itself as to whether or not statutes are substantially similar requires some level of comparison between the visiting state conviction and Texas statutes. It could be several. It appears that Randy Ortega, to answer your question, it appears that Randy Ortega looked at three different statutes and found that there was no substantial similarity. I'm not aware exactly of whether the attorney, plea attorney, conducted the wrong evaluation of the comparable statutes. I'm not sure about that, Judge, but I do know that that is all he did. He did his own evaluation. I mean, isn't the point of the anonymous case that you compare the elements of the offense as you do in federal sentencing and not the background conduct, right? Well, that's another interesting point. I've read anonymous, Your Honor, and Randy Ortega, I believe, and this is my position, based on reading anonymous and reading Prudhomme, which is a court of criminal appeals opinion, that laid the law, the three parties before anonymous, I believe that Mr. Ortega claims that anonymous was a deciding factor in him giving a different decision from his predecessor. I don't think that that is accurate. Anonymous did not change the law. Anonymous reaffirmed the whole thing in Garcia. All right. Well, let me go back then another step because Judge Rodriguez, the district judge here, had really very little trouble in concluding that the fundamental elements of these statutes are the same. And doesn't that make all the rest of this argument irrelevant? No, Your Honor, respectfully. Actually, it does not. Under the Hill v. Lockhart analysis, the question is that but for client knowing that he had to plead these offenses or whether he had to plead a one even after August 30th, would he have pled guilty? And the likelihood of conviction is not the determining factor in determining whether or not counsel is ineffective in representation of a plea. Well, but the fact that, A, all people claim they misunderstood the law, but, B, they didn't really misunderstand the law indicates that their advice should not have been different, and I think that's what swayed Judge Rodriguez. But, Judge, Judge Rodriguez did not consider that despite his own independent analysis of the statutes other than Randy Ortega, Ms. Galavis, and Clark Adams, that what mattered was ultimately what my client had in his head and what he understood before he decided to plead guilty. Actually, I never, what's your best case for saying that even though counsel gave advice, which in retrospect, which might have been, counsel thought was correct, might have been dubious, but other people see as correct, that he would have pled not guilty and gone to trial? Okay. What's your best case for the involuntariness or the Hill v. Lockhart standard for that plea? Your Honor, you would have to find that counsel was ineffective. Yeah, exactly. And I agree with you on that. We believe that we have shown that counsel did not do everything he could to find out at some point from DPS that the law had changed. He could have sent an email to someone. He could have done anything like that. He could have checked maybe days before the plea. Has the law changed? He could have researched case law. He didn't do that either at all. And so barring that, if the court does not believe that plea counsel was ineffective, then we go to the next argument, which is a standalone involuntariness claim, which Judge Matthey recognized as having been raised. There's no bar to it. The government never objected to it, and it was before the court, and she made findings. We are arguing that either alone or in combination with a standalone voluntariness argument, this plea was not voluntary. And I don't think there's much dispute that this man did not understand all of what would have made his plea known, intelligent, and voluntary. You know what? I have a real hard time thinking that this fellow, quote, given his conduct, which was displaying himself to multiple young girls and teenagers, and the fact that he was caught three times perhaps understates what he had done. And everybody who does that, I think, knows that there are sex offender registration statutes. Your Honor. So, you know, this whole idea, oh, the guy, well, he's just a little sad sack who didn't. Your Honor, I wouldn't hold him to that standard, considering that we cannot even hold the attorneys who handled this case to that standard. It is nothing easy to do. He felt relevant to his state of mind, relevant to Hilby Lockhart. He was always of the opinion, and the government conceded, that he would have gone to trial. But it's just not simply a subjective test. I mean, you know, you have to have a rational basis for the defendant's decision to plead not guilty. Your Honor, he believed he didn't have to report. He did his own research. I understand that, but if this was just in vacuo, and the anonymous case had not come out, and you were before us and your only argument is, well, he just didn't think he had to register, we'd say case closed, you know, 2255 dismissed, because Hilby Lockhart is not a purely subjective test. Well, it's. I mean, if he really felt that way, he should have moved to withdraw the guilty plea, but he never did that. But he didn't know that, Judge. No, I'm saying even absent this uncertainty about this anonymous case. I mean, I agree it's not the usual sort of case. Yes, Your Honor. Today, though, it's not a crime? It's not, neither of them. But you have Judge Rodriguez, a federal judge, saying they're similar, and then you have an opinion from the state of Texas saying, no, they're not. And with all due deference to the district court, Exhibit Rodriguez's prerogative to decide this issue ultimately on the facts and the law, the ultimate issue here is that no matter what he or anybody thinks about whether or not these were reportable offenses, whether the similarity of the statute was substantial, ultimately, Texas law has made, has announced, and it is a final word under Crabtree, the Court of Criminal Appeals, it is not a crime. It wasn't a crime at the time he pled guilty to either of the two offenses. And I reiterate, this is, if I may, Judge, just add real quick. What's not a crime? The displaying himself or the registry? The failure to register, Your Honor. The Nevada allegation during the plea and at sentencing led my client also to plead guilty. He thought he was supposed to report based on a Nevada conviction. That has never been the case. So he pled guilty, and then how, when was he sentenced? He pled guilty September 24th. He was sentenced December, Your Honor. So from that, from the day of the plea to December, the attorney could have filed a motion to withdraw the guilty plea. So there was an additional couple of months of notice about anonymous. Sure. There was time, even afterwards, the rules allow for a motion for new trial, new discovered evidence. None of that occurred, Your Honor. Unfortunate for him, but he sat there for two years and found out afterwards that it didn't have to happen. I don't know if I have any time left. You have time for rebuttal. Yes, Your Honor. Briefly, we also have raised the issue of actual innocence under Schlupp as a fallback argument. I believe that it would have been very difficult for the government to try this case if you have two expert witnesses, Randy Ortega and Galavis, pitted against each other to see how it is that Texas determines reportability. And I'll save my time. You have time for rebuttal. Thank you. Ms. Embry. May it please the Court, Counsel. Can we get Nevada out of the way first? I mean, was that ever a crime? Are we going to spend a lot of time on Nevada? I don't think Nevada really comes up here at all, Your Honor. All right, so you're yielding on Nevada. Is that right? Well, I'm not yielding. I'm just saying here I don't think it's pertinent to the Court's analysis under Strickland v. Washington as to whether or not this counsel was deficient in his performance. And going back to Judge Prado's question about where did the attorney fall short, I think the answer is he didn't. But Clark Adams is a pretty short guy. Yes, Mr. Clark Adams is. But he testified at the evidentiary hearing before Magistrate Judge Matthey that he had received all the discovery in the case. And the government at, I think it's in the record at page 146, the government in its response to the 2255 asserted that all these documents had been turned over to Defense Counsel and Discovery. And Mr. Clark's testimony at page 415 in the record, he stated that he had received the discovery, that he reviewed the Arizona statute and the Texas statute, and found through his analysis that the two crimes were substantially similar, which, of course, is exactly what the DPS had determined at that point. So at the time that the defendant was going through the process, having been arraigned, as Judge Jones had pointed out, he was aware of the charges in the indictment. He had read the indictment. He told the district court that he had read the indictment, understood them, discussed them with his counsel. And he pled guilty to having failed to register at the time charged in the indictment. At that time, the DPS attorney, Ortega, testified at the evidentiary report, and the record is at 383 through 387, that at the time that this man was charged, DPS had determined that this was a substantially similar crime to the Texas offense. Well, we know that, so we don't need the background. Sorry, do you need water? I'm fine. Well, you don't sound good. I'm sorry, it's just asthma. It will go away. But so skipping to that, where did counsel fall short? He did not. He was aware that these two offenses were similar. And, in fact, the district court later determined that the two offenses were similar, which supports the fact that the defense counsel here was not deficient in his performance. At the time that Anonymous came out, the DPS attorney, Randy Ortega, who no longer is with DPS, he testified that the defendant still had a duty to report, because DPS is the entity charged with determining whether or not this requires reporting and registration. And he testified he still had that duty up until the time that DPS determined that he no longer did. So, in other words, what this affected was the defendant's prospective duty to register, not whether or not he was guilty of the crime or whether or not he had a duty to register at the time. He testified that until DPS changed that determination, and they did not change that determination until June of 2014, I believe it was. Let me double-check that. And, of course, I can't find it. But it was not until the defendant was released from prison, having served his time, that DPS changed their determination. And, again, Randy Ortega testified during the evidentiary hearing that this was not a statutory change, that the anonymous decision merely told them that they needed to compare the elements of the two offenses. And Mr. Ortega said he compared them, and he would probably find that they were, except in this particular case, the judgment from Arizona left out the words to a minor. But when you look at the Arizona statutes, the only way that the defendant could have pled guilty to a Class VI felony was if the statute was to a minor. And so that's one of the reasons why the district court, Judge Rodriguez, determined that Mr. Ortega was just simply wrong. But if you look at the Arizona public sexual indecency statute and the Texas indecency with a child statute, and you look at the elements, the Arizona statute does not mention any specific body parts, whereas the Texas statute does go into specifics of body parts. The Texas statute requires the presence of a child. The Arizona statute does not. The Texas statute requires knowledge regarding the presence of a child. The Arizona statute does not. And the Texas statute requires a specific intent to arouse or gratify sexual desire, and the Arizona statute does not. So it would seem to me that there's some significant difference between the two statutes. With all due respect, Judge Prado, 13-1403, the Arizona statute, public sexual indecency to a minor in the classifications, it sets out that public sexual indecency with a minor involves the acts listed in subsection A. And one of those acts is an act of sexual intercourse, an act of oral sexual contact, an act of sexual contact. And then it's defined, those acts are defined as things, and I can't find it now in my brief, but I know it's in my brief, that those would be incorporated within the Texas statute of a public indecency with a child. And, indeed, the- But that's not what he did. He just displayed himself, right? He masturbated. Right. So that is a sexual act. I mean, yeah, but he didn't make any contact at all. Well, an act of sexual intercourse, an act- Well, that's not the way I understand intercourse. I can't find it now, but I believe that all that is incorporated within the Arizona statute's definition of an act of sexual intercourse, what he did here. 13-1403? Yes, Your Honor. Okay. And a child is present, has to be present. In subsection B of 13-1403, it says a person commits public sexual indecency to a minor if he intentionally or knowingly engages in any of the acts listed in subsection A, and such a person is reckless whether a minor under the age of 15 years is present. So is that what he was charged with or is that what he pled guilty to? That's what he was charged with. And the guilty plea in Arizona was the plea agreement said that the defendant pled guilty to count two amended attempted public sexual indecency, a Class 6 designated felony. And under the Arizona scheme, the only way that public sexual indecency to a minor could be pled down to a Class 6 designated felony is if it's an attempt. So basically they amended count two, which was the public sexual indecency to a minor in Arizona, and pled it down to an attempt. Well, it cites statute 13-1403, which is titled public sexual indecency to a minor. Yes, that's correct, Your Honor. And also Mr. Ortega testified about this, and he said when he looked at the judgment that it had omitted the words to a minor, and he noted that it was a Class 6 felony in Arizona, and the only way you could plead down that particular count of the indictment to an attempt was if it was to a minor. But he said he just gave the benefit of the doubt to the defendant. And that's during the evidentiary hearing, and I believe it's between pages 383 and 387 in the record that he makes that comment. And I cited it also in my brief. But so going back to the Strickland v. Washington analysis, the first prong of Strickland is you have to determine whether defense counsel was deficient in his performance. And here, at the time that the defendant was charged, at the time the defense attorney examined the statutes, it is clear that DPS said the defendant had a duty to report and register. So Mr. Adams was not deficient in his performance when he compared those two statutes. And, you know, where is the line drawn? Does the attorney have to have a duty to anticipate every subjective change in the DPS's analysis? And I don't think Strickland requires that he have that duty. Well, you say it's a subjective change in DPS's analysis, so you're saying the case does not turn on the issuance of the anonymous opinion? I don't believe that it does, Your Honor. I believe that all anonymous did, it wasn't a change in the law. It wasn't a change in any of the statutes. It was merely a change in their analysis. And as the— Well, what's the change? What is the change? Well, according to Mr. Ortega, he said that the change is that they are no longer required—they are no longer allowed to look at the facts. They are only to compare the elements of the offense. And when he stated he compared the elements of the offense, he basically said, I looked at the judgment. The judgment left out the words to the minor. So I gave the defendant the benefit of the doubt. But remember, too, that that happened. DPS did not make that determination until after the defendant had been released from prison. So it was approximately 2014 when they made this decision, and the defendant was charged in 2012. And pled guilty in 2012. But—so going back to the Strickland v. Washington analysis, when you don't meet the first prong of the analysis, when you cannot show that defense counsel was deficient, then you don't get to the second prong to determine whether or not there's— Well, to answer my question about anonymous, though, anonymous interprets the law. And when you interpret the law, the interpretation applies at a minimum to all pending cases because it's, you know, when the courts are interpreting the law, which was the law before and the law after. So I find it hard to accept your prospective retrospective argument. But I also have to say, if this came out and changed the law while he was in the process of having final judgment assessed, then if it changed things, which I'm dubious about, but, you know, you have to say that anonymous would have been relevant. If not, if Ortega would have looked at things differently. I believe Mr. Ortega said that anonymous did not change the law. That was his testimony at the evidentiary hearing. He said it only changed his way of determining whether these— Well, I understand that, but it's a decision that makes a difference because it—yes, if it says you don't look at the background facts anymore, you only look at the elements of the crime, then, you know, that's the standard you have to go by, and it applies to pending cases, which his was at the time. And according to Judge Rodriguez, when he compared the elements of the offense, he found that Mr. Ortega was simply wrong. And, in fact, Mr. Ortega did testify, basically, that it wasn't the elements that he examined, it was the judgment. And because the judgment used the truncated title of public sexual indecency without adding in the words to a minor, that he gave the benefit of the doubt to the defendant. So that is not a comparison of the elements that he did there. And I think that's why Judge Rodriguez focused on his analysis of Mr. Ortega's determination after, in the 2014, was incorrect. But I don't believe here that in a 2255 context, the burden is on the defendant to show that his counsel was deficient, that his performance fell below a professional standard here, an objective standard here. And I don't believe that they have met that threshold requirement of showing deficient counsel here. And based on that, the court does not need to go forward and determine the second prong of Strickland. But I think it's clear here that Mr. Adams was not deficient. He did examine the statutes. He made the correct analysis. And the district court's opinion supports that analysis. And the defendant was aware at the time that he was pleading guilty of the charges against him. The Rule 11 colloquy with Magistrate Mathie was thorough, and all the bases were covered. And she determined at the time that his plea was voluntary. And as to the defendant's argument that he was actually innocent of the crime, I think it's clear that that is not the case. Even Mr. Ortega testified that they were the ones that had the duty to make that determination. And at that time, they had made the determination, and the defendant had a duty to register. He said that that determination goes on until they determine otherwise. Okay, I think we have your argument. So what would happen here? I don't know what decision we're going to render, but if we should decide to grant Section 2255 relief, what would happen to this case? What would occur in your view? I believe that the defendant would no longer have a duty than to register in the future. But he served his time. Well, is there supervised release or anything like that? There is supervised release. So what would happen to that? I'm just asking you to take the whole case. What happens to it? I believe the only thing that's going to happen would be, depending on what the Court's opinion here would be, I think the only thing that's going to change is any prospective duty to register as a sex offender in Texas. But he's not reporting right now, right? Because right now he's not required to. No, but Ritt was denied. My understanding is that, yes, he is. He's registered? I could be wrong. I'm sure defense counsel would know better. But Judge Rodriguez did deny the 2255. So whether or not he's still required to register with DPS, that I'm not sure of, but he is still on supervised relief. Right, but he's not required to be reporting under state law. That I don't know, Your Honor. I'm sorry. And the supervised release is, what, 40 years or something? It's a long time. His probation in Arizona was lifetime. His duty to require was lifetime. And in Texas this would be what they call a post-10. So he would be required to register for 10 years after such time. No, but I'm asking you about his federal supervised release. I believe it was 30 years. How long? I believe it was 30 years. 30 years, all right. Yes. Anything further? Okay, thank you. Okay, Mr. Aristotelidis. Yes, Your Honor. To answer the court's question, my client is not required to register at all. Under Texas law, he's not required to register now from the moment he got out. But he is under supervised release. He is under federal supervised release. But one of the conditions of federal supervised release would have been to report in Texas as a sex offender. And that's not required. And so I will go back to the record and point out that Randy Ortega testified that had he been asked, which nobody did, back after August 30th, before my client pled, that my client had to report, his answer would have been no, he did not have to report. His statement was that Anonymous changed the law. Not only that it changed his mind, but that Anonymous changed the law. That's what he said. I don't think that Anonymous did. But regardless of what his motivation was, his word is a final word. His motive, I mean, his subjective, his personal interpretation, well, you may be right about that, but I just have to say, I mean, doesn't it make some difference that Judge Rodriguez had a very simple explanation here for the congruence between the Texas and the Arizona statutes? And to me it's fully convincing. To prove indecency with a child by exposure under Texas penal code, the state must prove child younger than 17. Accused exposed genitals, knowing child was present, with intent to gratify the sexual desire. Under Arizona 13403, a person commits public indecency by intentionally or knowing engaging in an act of sexual contact. The phrase sexual contact has been interpreted by Arizona courts to include a defendant masturbating in public or exposing in public. Your Honor, I could make arguments that they're not substantially similar. Well, you can make them, but substantial doesn't mean exactly alike. I understand, Your Honor. To me, that's what differentiates the statutory discussion in Anonymous from the comparison that Judge Rodriguez did. And whatever Mr. Ortega said, he was saying in cross-examination on the stand, right, or even direct examination. Well, he was testifying as to what he had already written in a letter to my client before, which is that he did not have to report. My client checked, and he got a letter from Ortega, and Ortega clarified that at the time of the plea he would have given the same response. And what I'm trying to point out here is regardless of how this decision is made in Texas, which I have a problem with because it does connect with the issue of actual innocence, what would have happened at trial? It would have been a mess, I think. The fact is that DPS is the final word. Ortega was the final word. Whether he did it one way or another, his word was final. So what did he plead guilty to in Arizona, and does that make a difference? I don't think it makes a difference ultimately, Judge, as far as what my client thought he should have done. Now, one of the major differences that Ortega pointed out is that the judgment nor the plea mentioned the word minor. And so even the judgment itself was not clear as to exactly what it was he pled to. I disagree with you completely on that because I have the judgment here, and it says he's pleading guilty to, you know, redefine count 2, section 1403, which is titled public sexual indecency, indecency to a minor. Well, the reference to the statute is there. Well, so how can it be any, I mean, it's absurd to consider that a technicality. DPS decided it, Judge, and it's the law. It was a law from August 30th, and it's the law now. Well, there's a reason why Mr. Ortega is not working there anymore. I won't disagree with you on that. Well, I mean, whether, you know, what bearing that has on your client, I don't know, but this is bizarre. I do urge the court to consider, though, that there is also the argument, that's a standalone argument, that the plea was involuntary. There's no bar to it. It was raised, and it's been substantiated. My client understood the whole time he didn't have to. Actually, under a straight-up analysis of whether the plea is voluntary or not, it was not. Clearly, he would not have pled guilty had he known this information. It just does not make sense that somebody could not know any of this information with the intent of trying this case and years later finds out that legally he was not supposed to, he would not have pled to it. It doesn't make sense, but it does make sense because this is a very bizarre set of circumstances. It is, Your Honor, and I understand, but I ask the court to consider the alternative argument either together with IAC, even if the court believes that counsel was not ineffective, we have involuntary plea, which was never barred, and we have Schlupp. And I believe that under Schlupp, once you have the voluntariness violation, which is a constitutional violation, together with the newly discovered evidence, clearly newly discovered by the defendant who found out two years later that he didn't have to report, together it was more likely than not that a jury may find him not guilty. Now, Schlupp, there's not a lot out there on that. It's been on the books for a long time. But it fits this type of weird situation, I think, I could say neatly, and I think that it is a strong backup argument. Ultimately, we ask that the court to answer your question. The relief here would be to grant a new trial. My client would be entitled respectfully to try this case and try his chance. He should have been able to do that before. He had no information and actually misinformation by counsel. And I will add, too, that with due respect to Mr. Adams, he misinformed counsel, whether it was in good faith or not, and I believe that it may have been. But that misinformation was never corrected. I have one other. Why was this prosecuted under federal law and not state law? I don't know, Judge. The marshal service looked it up, found it, and they did their own investigation, and they arrested my client. But that's interesting. There is apparently a process by which you can appeal DPS determination in state court to a district court. And so that was not done here. But like I said, it would have been a difficult case to try in light of the difference of opinion between Randy Ortega and Galavis. We think we should receive that benefit. My client should get a new trial. And then the government can decide if they want to go to trial in this case and put the whole system that Texas uses out to see if it really works or not, because it seems to me like it's extremely subjective, maybe even unconstitutional on due process grounds. That's all we have, Judge. All right. Well, you've done a great job as CJA counsel, and we thank you very much. Pleasure. Thank you all very much. Thank you.